IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* CENTURY ALUMINUM COMPANY SECURITIES LITIGATION,<br><br>_____ /<br><br>This document relates to all actions.<br>_____ / | Nos. C 09-1001 SI, C 09-1103 SI, C 09-1162 SI, C 09-1205 SI<br><br>**ORDER GRANTING MOTIONS TO CONSOLIDATE CASES; RE: MOTIONS TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL** |

    Now before the Court are several motions to consolidate these actions and competing motions for appointment as lead plaintiff. After consideration of the parties' arguments and papers, including Waterford Township General Employees Retirement System's supplemental memorandum, the Court GRANTS the motions to consolidate and consolidates all four cases. The Court APPOINTS Stuart Wexler as lead plaintiff for the Securities Act claims and APPROVES Mr. Wexler's selection of lead counsel on those claims. As discussed in this order, the Court directs Mr. Wexler to file a supplemental statement regarding his willingness and ability to act as lead plaintiff for the Exchange Act claims.

**BACKGROUND**

    Presently pending in this district are four class action lawsuits brought on behalf of all persons who purchased or otherwise acquired the common stock of Century Aluminum Company ("Century"), either pursuant to and/or traceable to Century's January 28, 2009 Secondary Offering, or between April 24, 2008 and March 2, 2009, the alleged class period.[1] Three cases – the *Petzschke*, *Abrams*, and *McClellan* actions – allege claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the

---

[1] The cases allege slightly different class periods; this is the largest alleged class period.

"Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. One case, the *Hilyard* action, alleges claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. All cases allege that Century materially misrepresented its financial condition, and specifically that Century failed to properly report cash flows. All cases allege that Century's misrepresentations were revealed on March 2, 2009, when Century issued a press release and filed a Form 8-K with the SEC stating that the company's financial statements for the nine months ending September 30, 2008 could not be relied upon because of incorrect reporting of cash flows. The day after the disclosure, Century's stock price dropped from $2.22 to $1.67.

Now before the Court are (1) defendants' motion to consolidate all four actions, (2) the Waterford Township General Employees Retirement System's ("Waterford") motion to consolidate all four actions, and motion for appointment as lead plaintiff and for approval of its selection of lead counsel; and (3) a motion by plaintiffs Stuart Wexler and Peter Abrams ("Wexler plaintiffs")[2] to consolidate only the *Petzschke*, *Abrams*, and *McClellan* actions, and for appointment as lead plaintiff and for approval of their selection of lead counsel.

## DISCUSSION

**I.    Motion to consolidate**

Under Rule 42(a) of the Federal Rules of Civil Procedure:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money by everyone involved. *See In re Equity Funding of Amer. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)

---

[2] The motion was originally filed on behalf of a third individual plaintiff, Marc Panasuk. The Wexler plaintiffs have withdrawn Mr. Panasuk due to Mr. Panasuk's "personal and professional issues." Wexler Opposition Decl. ¶ 6.

(citation omitted). A court must rule on a motion to consolidate before it can rule on a motion to appoint a lead plaintiff. Securities Exchange Act, § 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Defendants and Waterford move to consolidate all four cases, while the Wexler plaintiffs move to consolidate only the *Petzschke*, *Abrams*, and *McClellan* actions. The Wexler plaintiffs agree that the fourth case, *Hilyard*, arises out of the same facts as the other three cases, but they contend that *Hilyard* should not be consolidated because *Hilyard* is the only case to allege claims under the Exchange Act. The Wexler plaintiffs argue that the "burdens of proof and elements of a claim for violation of the Securities Act are far different and much less onerous than those applicable to claims brought under the Exchange Act." As a result, the Wexler plaintiffs assert that it is "quite likely" that consolidation of these cases would harm the Securities Act plaintiffs through delay and expense incurred while litigating the more complex Exchange Act claims.

The Court is not persuaded by the Wexler plaintiffs' arguments, and finds that consolidation of all four cases is in the interest of efficiency. All four cases share common questions of fact, and each makes claims centering on Century's restatement of cash flows in March 2009. While there are some legal differences between the Securities Act and Exchange Act claims – such as whether defendants acted with scienter – the similarities are far greater because the claims in all cases revolve around whether Century materially misrepresented its financial condition. Accordingly, the Court GRANTS the motions to consolidate and consolidates all four cases.

## II. Motions to appoint lead plaintiff

Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides well-defined standards and procedures for selecting lead plaintiffs in a securities class action and is "intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." H.R. 104-39 at 32. *See generally In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 432-436 (E.D. Va. 2000). Under the procedures set out in the PSLRA, all proposed lead plaintiffs must submit a sworn certification setting forth certain facts designed to assure the Court that the plaintiff (I) has suffered more than a nominal loss, (ii) is not a professional litigant, and (iii) is otherwise interested and able to

serve as a class representative. 15 U.S.C. § 78u-4(a)(2)(A). The plaintiff in the first lawsuit to be filed must additionally publish notice of the complaint in a widely circulated business publication within twenty days of filing the complaint. *Id.* at § 78u-4(a)(3)(A)(I). The notice must include a description of the claim and notify prospective class members that they may move within 60 days of the notice to be named lead plaintiff.

Once applications for lead plaintiff status are closed, the district court must determine who among the movants for lead plaintiff status is the "most adequate plaintiff." *Id.* at § 78u-4(a)(3)(B)(I). The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." *Id.* In the Ninth Circuit, *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), governs lead plaintiff selection and establishes a three-step process. First, as discussed above, timely and complete notice of the action must be published. *Id.* at 729. Second, the district court considers the losses suffered by potential lead plaintiffs and selects "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* at 730, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Thus the court must determine which plaintiff "has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. Finally, the court focuses on that plaintiff to ensure that the proposed lead plaintiff "satisfies the requirements of [Fed. R. Civ. Pro.] 23 (a), in particular those of 'typicality' and 'adequacy.'" *Id.* A plaintiff who satisfies the first two steps becomes the "presumptively most adequate plaintiff." *Id.* In step three, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. *Id.* at 730, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Once the court has designated a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). A court generally should accept the lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." *Id.* at § 78u-4(a)(3)(B)(iii)(II)(aa). In the Ninth Circuit, *Cavanaugh* establishes the standard for approval of lead counsel. "[T]he district court does not select class counsel at all," *id.* at 732; instead, the district court generally approves the lead plaintiff's selection of counsel.

4

Here, the two competing motions have each been modified during the course of briefing. The Wexler group originally consisted of three individuals, Stuart Wexler, Peter Abrams and Marc Panasuk, and sought to be appointed lead plaintiffs in only the three Securities Act cases. Mr. Panasuk withdrew due to personal and business reasons, and in response to Waterford's arguments about Mr. Abrams and his connection to the Wolf Haldenstein firm[3], Mr. Wexler (without conceding the merit of Waterford's contentions) stated that he was willing to act as the sole lead plaintiff for the three Securities Act cases. In the event the Court consolidated all four cases, Mr. Wexler stated he was willing to act as co-lead plaintiff with authority over only the Securities Act claims, or as lead plaintiff over a consolidated case advancing both Securities Act and Exchange Act claims.

In contrast, Waterford originally sought to be appointed as lead plaintiff for all four cases, despite the fact that Waterford only has standing to allege an Exchange Act claim. Waterford's motion stated that Charles Hilyard, the named plaintiff in the Exchange Act case, *Hilyard v. Century Aluminum Company et al.*, C 09-1205 SI, also has standing to assert Securities Act claims, and that Mr. Hilyard joined in Waterford's motion "and will serve as class representative for those persons who purchased shares pursuant or traceable to Century Aluminum Company's January 28, 2009 Secondary Offering." Docket No. 19 at 1 n.2. Waterford did not seek to have Mr. Hilyard appointed as a lead plaintiff, and did not submit a declaration from Mr. Hilyard, and Waterford's motion papers did not contain any information about Mr. Hilyard. In response to the Court's questions at the hearing about Mr. Hilyard, Waterford submitted a declaration from Mr. Hilyard in which he provided some information about his occupation, how he became involved in the lawsuit, and in which he stated that he would be willing to serve in a representative or co-lead plaintiff capacity. Mr. Hilyard also stated that he had not originally sought to be appointed as lead plaintiff due to the relatively small size of his financial interest[4] and after being informed that larger investors would likely seek appointment as lead plaintiff. Hilyard Decl. ¶ 5. Waterford also submitted a supplemental memorandum in connection with Mr. Hilyard's declaration

---

[3] Peter Abrams is the son of Robert Abrams, Esq., of Counsel in the New York office of Wolf Haldenstein. The Wexler plaintiffs have selected Wolf Haldenstein as their counsel.

[4] Mr. Hilyard purchased 555 shares of stock at a price of $4.50 per share. Hilyard Compl. Certification ¶ 4.

stating that Waterford "welcomes Mr. Hilyard's involvement as a representative party for claims arising out of the Securities Act of 1933 and/or would not object to the Court's appointment of Mr. Hilyard as a co-lead plaintiff," but that Waterford believed it was an appropriate sole lead plaintiff. Waterford's Supplemental Mem. at 2:3-5.

The Court will examine the competing motions using the three step process established by *Cavanaugh*, 306 F.3d at 729-30. First, as to published notice, there is no dispute that plaintiff Eric Petzschke filed his suit first and timely and completely filed notice. Second, with regard to financial interest in the litigation, and using the largest class period of April 24, 2008 - March 2, 2009,[5] Mr. Wexler[6] reports total losses of $39,721 and Waterford reports total losses of $26,947. Even if Mr. Hilyard's losses are aggregated with Waterford's losses, Mr. Wexler has greater losses. Thus, if Mr. Wexler otherwise meets the requirements of Rule 23(a), and in particular those of "adequacy" and "typicality," Mr. Wexler becomes the presumptively most adequate lead plaintiff. *See Cavanaugh*, 306 F.3d at 730. To make this determination, the Court reviews Mr. Wexler's sworn certification and declarations. *Id*.

"The focus of the typicality inquiry is not on plaintiff's behavior, but defendants'." *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 373 (D. Del. 1990). If defendants' course of conduct gave rise to all class members' claims and if "defendants have not taken any action unique to the named plaintiff, then the representative's claim is typical." *Id.* (citations omitted). Here, the central question in all the cases is whether defendants made misrepresentations that artificially inflated the company's stock price, and there is no suggestion that defendants took any action specific to Mr. Wexler that would render him atypical. Thus, Mr. Wexler meets the typicality requirement.

With regard to adequacy, the Court finds that Mr. Wexler is adequate to act as lead plaintiff for

---

[5] The parties dispute the appropriate class period to analyze financial losses. Waterford asserts that the larger Exchange Act class period is proper, while Mr. Wexler contends that the smaller Securities Act class period is proper. Because the Court is consolidating the four cases, and because Mr. Wexler would be a member of the Exchange Act class, the Court finds it is appropriate to use the larger Exchange Act class period.

[6] In light of Mr. Abrams' connection to the Wolf Haldenstein firm, and Mr. Wexler's willingness to act as the sole lead plaintiff in the Securities Act cases, the Court finds it appropriate to limit the analysis of the motion to Mr. Wexler.

6

the Securities Act claims, and Waterford has not shown that Mr. Wexler will not do a fair and adequate job. *See Cavanaugh*, 306 F.3d at 732 n.10 ("Once the presumption triggered . . . the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job.") (internal quotations omitted).

However, the Court is concerned that, given the arguments advanced by the Wexler plaintiffs about the inherent tensions between the Securities Act and Exchange Act cases, Mr. Wexler may not be the most adequate lead plaintiff for the Exchange Act claims.[7] If Mr. Wexler and his counsel are willing and able to zealously advocate on behalf of the proposed Exchange Act class, the Court will appoint Mr. Wexler as the sole lead plaintiff in the four consolidated cases. The Court directs Mr. Wexler to file a declaration no later than **September 15, 2009** regarding his willingness to act as lead plaintiff on both the Securities Act and Exchange Act claims. If Mr. Wexler feels he is unable to vigorously represent the Exchange Act class, Mr. Wexler shall so state, and the Court will appoint Waterford Township as co-lead plaintiff and approve Waterford Township's counsel as co-lead counsel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to consolidate, and GRANTS in part and DEFERS in part the motions for appointment of lead plaintiff and for approval of selection of lead counsel. (Docket Nos. 15, 19 & 27 in C 09-1001 SI; Docket Nos. 13 & 20 in C 09-1103 SI; Docket Nos. 9 & 16 in C 09-1162 SI; and Docket No. 9 in C 09-1205 SI).

**IT IS SO ORDERED.**

Dated: September 8, 2009

SUSAN ILLSTON
United States District Judge

---

[7] *See* Docket No. 32 at 14-15.

7